MORTIMER *v.* CURLE.

(Division B.  Sept. 26, 1938.)

[183 So. 485.  No. 33296.]

W. D. Womack and J. A. Mortimer, both of Belzoni, for appellant.

**R. H. Nason,** of Belzoni, for appellee.

**McGehee, J.**, delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Humphreys County canceling a certain forfeited tax land patent issued by the State of Mississippi to the appellant on the 23rd day of September, 1936, as a cloud upon the title of the appellee to the land involved, and decreeing the appellee to be the owner of said land.

The land in controversy was purchased by one James Lewis and wife from a former owner, A. M. Spencer, on January 18, 1930, at the price of approximately $15,500, evidenced by nine promissory notes, payable October 1, 1930, to October 1, 1938, inclusive, secured by a vendor's lien and a deed of trust on the land. These notes and the liens securing the same were duly assigned to the Grenada Bank. The deed of trust was thereafter renewed on December 8, 1932, and again on February 7, 1934, in favor of the Grenada Bank, as the then holder of the indebtedness, which remained unpaid, the last renewal being for the sum of $7,378.

In the meantime, James Lewis and wife permitted the land to be sold on September 18, 1933, for the unpaid tax assessed thereon for the year 1932, when the land was struck off and sold to the State of Mississippi. Under the statutes then in force, the title of the State matured on September 18, 1936, on account of the failure of the owners to redeem the same from the said tax sale. On the next day, James Lewis, according to the finding of the chancellor, on conflicting testimony, duly executed an application to repurchase the land from the State, addressed to R. D. Moore, State Land Commissioner, on the form prescribed for that purpose, and which ap-

plication was filed in the office of said State Land Commissioner by a representative of the Grenada Bank on September 22, 1936. On that same date, the appellant likewise filed his application for the purchase of the land, accompanied by a written statement from James Lewis to the effect that he had no desire to purchase the property described in the application of the appellant, which showed that he was the former owner. ·The application of the appellant was given the Serial No. 5969, while that of James Lewis was given the Serial No. 5970, under the requirement of Section 5 of Chapter 174 of the Laws of 1936, which requires that applications shall be filed by the Land Commissioner in the order in which they are received and that each application shall be given a serial number and shall be entered on a record book on the day it is received.

Section 4 of the said Chapter 174 of the Laws of 1936 provides that ''the Land Commissioner, with the approval of the Governor, is hereby authorized to sell any lands which may have been forfeited to the State for the nonpayment of the taxes after the time allowed by law for redemption shall have expired for any bona fide purchaser, at such price as the Land Commissioner, with the approval of the Governor, may fix. . . .'' It appears from the testimony that the Governor was not in the City of Jackson on the date these applications were filed, but that when he arrived at his office on the next morning he approved and signed the patent issued by the Land Commissioner in favor of James Lewis, prior to the time he affixed his approval and signature to the one issued in favor of the appellant. In fact, it does not appear at what time later in the day he approved and signed the patent of the appellant. The patent thus issued and delivered in favor of James Lewis, with the approval of the Governor, was thereupon promptly presented to and countersigned by the Secretary of State, returned to the office of the Land Commissioner, given

a prior patent number and duly recorded in advance of that issued in favor of the appellant.

The first question presented for decision on this appeal is whether the fact that the Land Commissioner was required to file the applications in the order in which they were received, and to give each of them a serial number, denied to James Lewis' priority in acquiring the title of the land by purchase from the State, since whatever title he acquired inured to the benefit of the trustee, under the deed of trust given by him to the Grenada Bank during the period of redemption, and which deed of trust was subsequently foreclosed, after refusal by James Lewis to renew the indebtedness or agree to pay the same, whereof the appellee, W. C. Curle, became the purchaser at the trustee's sale.

We find nothing in Chapter 174, Laws of 1936, requiring the Land Commissioner to issue a patent to the first applicant for the purchase of the land, and we are of the opinion that the applicant does not become entitled to acquire a patent under this Act until the price of the land has been fixed and the sale has been actually made, with the approval of the Governor; that the fixing of the price of the sale to the former owner and the issuance of a patent to him by the Land Commissioner, with the approval of the Governor, together with the delivery of such patent, upon the payment of the purchase price agreed upon, left these officials without power or authority to thereafter approve, sign and deliver the other patent on that same day to the appellant, notwithstanding that his application therefor was first in time.

Appellee cites numerous authorities to the effect that an entryman of Government land for homestead purposes acquires an equitable title thereto, and that when a patent is issued, it relates back to the date of entry, but we are of the opinion that these decisions are not applicable in construing the act here involved. Under the Federal Statutes, an entryman of Government land is required to do certain things whereby he acquires rights

prior to the issuance of his patent, while in the purchase of land under the Act here under consideration the applicant acquires no equitable right or title to the land, or any interest therein, until his application for the purchase thereof has been approved by the Governor of the State, as well as by the Land Commissioner, after the price agreed upon with the Land Commissioner is also duly approved by the Governor.

It is next insisted, that under the rule announced in the cases of Acoff v. Roman, 172 Miss. 141, 159 So. 555, and Ables v. Forrester, Miss., 181 So. 913, the appellee was not entitled to the relief prayed for, for the reason that he failed to deraign his title so as to show that a patent had been issued by the United States for the land in question. However, in the case of Acoff v. Roman, supra, it was neither shown that the parties claimed through a common source of title nor that the land in question was subject to taxation or private ownership. In the case of Ables v. Forrester, supra, the bill of complaint alleged that both Forrester and Ables claimed title under a forfeited tax sale patent from the State, and that the complainant, Forrester, held the prior patent. And, it was expressly denied in the answer that a patent to the land had ever been issued by the United States. This question being put directly in issue by the answer, and there being no proof offered to show that title had passed out of the Government, the court held that complainant, Forrester, was not entitled to recover. But, in the case at bar, the bill of complaint alleged that "the land in controversy was duly and legally assessed for taxes for the year 1932, and was sold to the State of Mississippi in default in the payment thereof, and that the State of Mississippi became the owner of said property by virtue of said sale." The answer of the appellant expressly admitted the foregoing allegation to be true. This admission, and especially the portion thereof to the effect that "the State of Mississippi became the owner of said property by virtue of said sale,"

together with the allegations and proof of the claim from this common source of title, dispensed with the necessity of proof being offered by the appellee to show that the title had been passed from the United States, since it necessarily followed that if the State became the owner of the property by virtue of the tax sale, the title had theretofore passed by patent from the United States.

We are therefore of the opinion that the decree of the court below canceling the patent held by the appellant as a cloud upon the title of the appellee was correct.

Affirmed.